# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>VICTOR RAMIREZ-GONZALEZ,<br>Defendant. | Case No. 5:14-cr-00407-BLF-1<br><br>**ORDER DENYING REQUEST FOR LEAVE TO MOVE FOR RECONSIDERATION**<br><br>[Re: ECF 41] |

Last month, the Court denied Defendant Victor Ramirez-Gonzalez's motion to dismiss the superseding indictment against him. *See* Order, ECF 35. The Court found that it was implausible that Ramirez-Gonzalez would have received voluntary departure during his 2008 removal proceedings. *See id.* at 16-20. Ramirez-Gonzalez now seeks reconsideration of this order, and requests leave to move for reconsideration under Fed. R. Crim. P. 2 and 57, and the provisions of the Local Rules governing motions for reconsideration. *See* Request at 1-2, ECF 41.

Under Civ. L. R. 7-9(b), a party requesting leave to move for reconsideration must show (1) that a material difference in fact or law exists from that which was presented to the Court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments. *See* Civ. L.R. 7-9(b)(1)-(3). Ramirez-Gonzalez argues that the first and third grounds are satisfied, but the Court finds that they are not.

Under Civ. L.R. 7-9(b)(1), Ramirez-Gonzalez argues that the Court misinterpreted *Paredes-Urrestarazu v. INS* and should not have granted any weight to his 2008 arrest on later-dismissed charges. *See* Request at 3-4, ECF 41 (citing *Parredes-Urrestarazu*, 36 F.3d 801 (9th Cir. 1994)). He further argues that when his 2008 arrest is removed from consideration, it is

plausible that he would have received voluntary departure. *See* Request at 3, ECF 41. In support, he cites three newly-identified cases in which aliens with domestic violence convictions received voluntary departure. *See id.* Under Civ. L.R. 7-9(b)(3), Ramirez-Gonzalez argues that the Court has not considered a dispositive legal argument on how *Paredes-Urrestarazu* supports his position. *See id*. at 3-4. None of these arguments is persuasive.

First, Ramirez-Gonzalez has not identified a material difference in fact or law that he could not have previously known in the exercise of reasonable diligence. At the time of Ramirez-Gonzalez's motion to dismiss, he already had been convicted of violating Cal. Pen. C. § 244, assault with caustic chemicals, for throwing hydrochloric acid on his girlfriend, who was trying to leave him, and her sister. *See* Order at 2, ECF 35. In other words, at the time of his motion to dismiss, he was aware that the Court would have to consider this conviction when weighing the equities on voluntary departure. *See* Reply at 11-15, ECF 32 (discussing Ramirez-Gonzalez's criminal record at the time of his removal proceedings). The three cases he cites as granting voluntary departure or other immigration relief to aliens with domestic violence convictions, however, date from 1972, 2008, and 2015. *See* Request at 3, 7-8, ECF 41. These are not new cases and Ramirez-Gonzalez has not shown why he could not have presented them before in the exercise of reasonable diligence.

Second, the cases that Ramirez-Gonzalez has identified do not support his request for relief. He argues that they show that it is plausible that aliens with domestic violence convictions can receive voluntary departure. *See* Request at 3, 7-8, ECF 41. But these cases are not helpful. The first, *Gutierrez v. ICE Field Office Dir.*, simply states that Gutierrez received voluntary departure in his immigration proceedings, despite having "caused a car accident with his long-term girlfriend" and being convicted of both third degree assault and reckless driving. No. C15-1331-JLR-JPD, 2015 WL 9469620, at \*1, \*3 (W.D. Wash. Dec. 2, 2015), *report and recommendation adopted*, No. C15-1331-JLR, 2015 WL 9474294 (W.D. Wash. Dec. 28, 2015). The case does not discuss the positive and negative equities that the Court must consider when determining whether voluntary departure is plausible, and so it is impossible for the Court to compare Ramirez-Gonzalez's equities with Gutierrez's equities to determine whether voluntary departure would

have been plausible for Ramirez-Gonzalez in light of *Gutierrez*.

The second case, *In re Varela-Gutierrez*, is distinguishable from Ramirez-Gonzalez's situation because the facts are quite different. 2008 WL 4065987 (DCBABR Aug. 8, 2008). Varela-Gutierrez received an extreme hardship waiver, which has a higher threshold than voluntary departure, in a case where the IJ already had granted voluntary departure—but in his case, both his wife and his wife's family supported his waiver application. *See id.* at *2. His wife suffered from bipolar disorder and would have suffered hardship if she and their United States citizen children went to Mexico with Varela-Gutierrez, and also would have suffered hardship if they remained in the United States without him. *See id.* at *2. Varela-Gutierrez's wife's family also would have faced severe economic hardship if he were removed from the United States. In contrast, Ramirez-Gonzalez did not live with his wife or children at the time of his 2008 proceedings, and he did not present any evidence that his wife, his children, or his wife's family would suffer hardship if he were removed. *See* Order at 19, ECF 35. The Court considered both family ties and humanitarian needs when weighing the equities of voluntary departure, and found that neither equity weighed in Ramirez-Gonzalez's favor. *See id.*

The third case, *Matter of Awaijane*, also is unhelpful. 14 I. & N. Dec. 117 (BIA 1972). More than five years before Awaijane's immigration proceedings began, he was convicted of attempted murder in Lebanon. *See id.* at 119. The special inquiry officer denied Awaijane voluntary departure because eligibility for voluntary departure required a finding of good moral character for the past five years, and the officer believed that the attempted murder had occurred within that five-year period. *See id.* at 119-20. The Board of Immigration Appeals reversed, because the offense had occurred outside of the five-year period. *See id.* at 119. The BIA also stated that Awaijane had been regularly employed since coming to the United States, contributed "very generously" to the support of his children in Lebanon, and had "no difficulty with the law" since coming to the United States. *Id.* at 120. Ramirez-Gonzalez also was employed and supported his children in the United States, which the Court considered, but his employment was unauthorized and thus illegal. *See* Order at 19, ECF 35. He also had had difficulties with the law since coming to the United States, and had a felony conviction for assault with caustic chemicals

and a misdemeanor conviction for driving without a license. *See id.* at 17-18.

Third, even if the Court removes Ramirez-Gonzalez's 2008 arrest from consideration, it still is not plausible that he would have received voluntary departure. Under Ramirez-Gonzalez's interpretation of *Paredes-Urrestarazu*, the 2008 arrest and the related allegations in the police report should not be considered. *See* Request at 5-7, ECF 41. But even if those are excluded from consideration, the balance of the equities does not support a finding that voluntary departure was plausible. In terms of negative equities, Ramirez-Gonzalez entered the United States without inspection, had a felony conviction for assault with caustic chemicals and a misdemeanor conviction for driving without a license, and his assault with caustic chemicals was a serious act of domestic abuse and evidence of bad character or undesirability as a permanent resident. *See* Order at 17-19, ECF 35. In terms of positive equities, Ramirez-Gonzalez had few: he had resided in the United States for six or eight years, but arrived as an adult and was not schooled here. *See id.* at 19. He had no community ties other than his unauthorized employment. *See id.* He supported his United States citizen children, but did not live with them or his wife, and the location of his children was unclear. *See id.* His other immediate family—his mother, siblings, and another child—lived in Mexico. *See id.* Under these facts, it is not plausible that he would have received voluntary departure in 2008. Ramirez-Gonzalez's request for leave to move for reconsideration thus is DENIED.

**IT IS SO ORDERED.**

Dated: August 23, 2016

_____
BETH LABSON FREEMAN
United States District Judge

4